UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUETZALCOATL LIRA-PRADO,<br><br>Defendant. | Case No.: 23-cr-02515-JES<br><br>**ORDER DENYING MOTION TO SUPPRESS EVIDENCE**<br><br>[ECF No. 61] |

## I.   INTRODUCTION

On November 15, 2023, Defendant Quetzalcoatl Lira-Prado ("Lira-Prado" or "Defendant") was arrested following the execution of a search warrant in which child sexual abuse material ("CSAM") was found on a cell phone seized from Defendant's residence. On March 24, 2025, Defendant filed a motion to suppress evidence challenging the seizure of his electronic devices and other items from his home, as well as the search warrant itself. ECF No. 61 ("Mot."). On April 21, 2025, the Government filed an opposition to the motion and on April 28, 2025, Defendant filed a reply brief. ECF Nos.

68 ("Opp'n"), 71. On April 9, 2025, the Court heard oral argument on the motion. ECF No. 72. Based on the papers filed and argument of counsel, the Court **DENIES** the motion to suppress.

## II. FACTUAL BACKGROUND

The facts are undisputed. In October 2022, an undercover Special Agent ("Agent") from Homeland Security Investigation ("HSI"), conducted an investigation over a messaging application called Telegram. The Agent saw an individual user ("Seller") offering child pornography for sale. The Agent contacted the Seller through a direct message on the application and agreed to purchase CSAM. The Agent obtained the Seller's PayPal account information.

In November 2022, the Agent found the Seller under a different account and agreed to purchase CSAM at the same price discussed in October. The Seller sent the Agent instructions for the PayPal payment, along with a hyperlink to make payments via PayPal. On November 22, 2022, the Agent sent a $70 payment to Seller's PayPal account and informed the Seller by message that the payment was sent. Seller immediately responded by sending the Agent 50 videos of CSAM through the Telegram instant messaging platform.

In February 2023, the Agent messaged Seller again to purchase CSAM. Seller agreed to sell 50 videos of CSAM for $55. The Agent sent $55 to the Seller's PayPal account and sent Seller a message that the $55 was sent. Seller then sent 50 videos of CSAM to the Agent. The Agent reviewed each video and confirmed the videos constituted CSAM and that the children depicted in the videos were of prepubescent age engaging in various sexually explicit activities.

In February 2023, after issuing a subpoena to PayPal, HSI agents learned that the Seller reportedly resides in South Africa, and that a PayPal account registered to qlirapra95@gmail.com ("Lira-Prado PayPal Account") sent four separate payments to the Seller's PayPal account between February 8, 2023, and February 17, 2023. HSI agents

learned that the Lira-Prado PayPal Account was registered to Defendant, listed credit card information, a phone number, and two addresses associated with the account.

On September 5, 2023, Magistrate Judge Karen S. Crawford signed a search warrant authorizing HSI to search Defendant's residence and seize electronic devices and associated evidence. On September 12, 2023, HSI agents executed the search warrant at Defendant's residence. When the warrant was executed, Defendant was at the residence along with his adult brother and minor sister. Initially agents, using a bullhorn, ordered the occupants to exit the home and Defendant and his siblings exited the home as ordered. Agents handcuffed Defendant and placed him inside of a police cruiser, away from his siblings. Agent Tannehill attempted to interview Defendant and informed Defendant of his *Miranda* rights. Defendant asked to speak with an attorney. Agents then asked Defendant what they informed him were routine personal, biographical questions that didn't require an attorney, such as his name, date of birth, phone number, and email address.

Agents searched the home and seized several electronics, including phones and computers, as well as a notebook that contained personal information, including bank account information, passwords, usernames, emails, diary entries, and scratch writing, among other things. Defendant objected to agents seizing the notebook and explained that the financial information in the notebook was necessary to pay his family's bills. Defendant requested that he be allowed to record the relevant pages in the notebook. Agents offered a compromise and informed Defendant he could use his just-seized cell phone to photograph the necessary notebook pages and send them to a loved one, but Defendant could not have unfiltered access to the cell phone and would have to use it in the Agents presence, while they held the phone. Defendant unlocked his phone in front of the agents, took photos of pages from the notebook and sent them to a family member.

Following the execution of the search warrant, the electronic media seized from Defendant's residence was forensically reviewed and the results revealed approximately 364 videos of CSAM on a Samsung mobile device.

//

### III. DISCUSSION

Defendant moves to suppress all evidence related to the seizure of a personal notebook, search of his cell phone as well as his statements. Defendant argues that although federal agents had a warrant to search his electronic devices, agents searched his personal notebook outside the scope of the warrant and without probable cause and the search of his phone was illegal in two independent ways: (1) agents unconstitutionally obtained Defendant's phone passcode after he invoked his right to counsel; and (2) the warrant was facially overbroad and lacking in probable cause. Additionally, Defendant moves to suppress all post-invocation "booking questions" that elicited information such as Defendant's email address and phone number. The Court will address each argument below.

**A. Seizure of Notebook**

Defendant argues that the seizure of his "password-filled notebook" was not authorized by the plain terms of the warrant and that but for the agents' search of its pages, its evidentiary value would have been unknown, and it could not have been seized. Mot. at 7. Further, Defendant argues that the notebook's content does not fall under the plain view doctrine. *Id.* at 8. The Government argues that Attachment B to the search warrant authorized the seizure of the notebook. Opp'n at 6. The Court agrees.

In the introductory paragraph of Attachment B ("Attach. B") to the search warrant, it authorizes "the search of physical documents." Attach. B. Further, several provisions of Attach. B authorized the seizure of the notebook, specifically the following provisions:

> g. Any documents, records, programs, or applications that identify the residents or the subject premises and to identify the Internet service provided to the subject premises.
>
> h. Information that identifies the occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; credit card information including but not limited to bills and payment records.

  k. Any and all usernames, e-mail accounts, or online identities that may have been used for the sexual exploitation of children.

Attach B. A notebook is obviously a physical document, and agents were authorized to search through physical documents according to Attach. B to look for information that identified the residents who occupy or own the premises as well as searching for usernames, e-mail accounts or online identities that may have been used for the sexual exploitation of children. Further, as the Government argues, the notebook was found in Defendant's desk and was sandwiched between Defendant's cell phone and a Rocket Mortgage document with Defendant's name and address on it. *See* Opp'n at 7. Inside of the notebook was usernames, passwords and email accounts, the exact items that section "k" of Attach. B authorized agents to seize. *Id.* Therefore, agents properly seized the notebook.[1] The motion to suppress the notebook and its contents is **DENIED**.

### B. Phone Passcode

Defendant contends that agents obtained his phone passcode in violation of his *Miranda* rights and Fifth Amendment right against self-incrimination. Mot. at 9-10. Defendant argues that after he invoked his right to counsel, agents conditioned his access to his family's financial wellbeing on giving up the right he had just invoked. *Id.* at 10. The Government argues there was no interrogation when Defendant entered the passcode into his cell phone, *Miranda* warnings were not required and Defendant's Fifth Amendment right against self-incrimination was not violated. Opp'n at 7-8. The Court agrees.

The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). While Defendant's freedom of action was deprived, and he may have been anxious, he was not asked any questions prior to, during or after entering his cell phone passcode.

---

[1] Since the Court finds that agents lawfully searched and seized the notebook, the Court declines to address whether seizure of the notebook falls under the plain view exception.

Agents had already lawfully seized both the notebook and cell phone prior to Defendant's request to photograph his family's financial information from the notebook. As the items were lawfully seized, Defendant's objection to the notebook's seizure is immaterial. Agents did not ask Defendant any questions or do anything designed to elicit an incriminating response.

However, *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-301. This applies to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Defendant contends that the agent's actions forced him to unlock his phone in their presence so they could view the passcode. Mot. at 10-11. Further, Defendant argues that this case is factually analogous to *United States v. Booker*.

In *Booker*, the defendant was interrogated by NCIS agents and invoked his right to counsel early during the interrogation. *Booker*, 561 F. Supp. 3d 924, 928 (S.D. Cal. 2021). Nonetheless, agents continued to question the defendant and during the continued questioning, defendant informed agents numerous times that he takes anxiety medication and would need to take it soon and eventually told agents that he needed his medication. *Id*. at 929. Defendant told agents his medication was in his locker and agents placed defendant's cell phone on the table in front of him, in view of the agents, to call to get his medication. *Id*. Defendant picked up the phone, and the agent told him he had to keep the phone on the table and defendant put it on the table and entered his passcode in the presence of the agents, one of whom noted the passcode in the agent's notebook. *Id*. at 929-30. At the time of the interview, the Government had not yet sought or obtained a search warrant for the cell phone. *Id*. at 930.

The Court suppressed the passcode and information obtained from the passcode because it was derived from an involuntary statement in violation of *Miranda* and *Edwards*. *Id*. at 939. The Court held that the continued interrogation in violation of *Miranda* and

*Edwards* eventually led the defendant to reveal his passcode. *Id*. at 939. The Court also held that for the same reasons it concluded that the defendant was compelled to provide his passcode in violation of his Fifth Amendment privilege, the statement was not knowingly and voluntarily made. *Id*. at 941. The Court further held that the defendant's revealing of the passcode to his phone was not a product of a reasoned decision to provide it to the agents, nor was it the result of carelessness. *Id*. Instead, defendant entered the passcode within view of the agents because an agent directed him that he needed to place the phone on the table while he used it to contact his command to send over his anxiety medication. *Id*.

This case is factually distinguishable from *Booker*. In determining whether a statement is "voluntarily made … the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." *Id*. (internal quotations and citations omitted). Here, Defendant's revealing of his passcode was the result of carelessness. First, agents executed a search warrant and properly seized the notebook and the cell phone prior to Defendant's use of the phone. As discussed above, the notebook was lawfully seized and contained information relevant to the investigation. Defendant had no right to access the notebook after its lawful seizure. Similarly, after the lawful seizure of the phone, Defendant had no right to access the phone. Additionally, the phone was suspected to contain CSAM, and it was proper for agents to restrict Defendant from having unmonitored access to the phone. Defendant was not compelled to provide his passcode to law enforcement. After examining the surrounding circumstances and the entire course of police conduct here, Defendant's Fifth Amendment privilege was not violated.[2] The motion to suppress the phone passcode is **DENIED**.

---

[2] The Government also alleges that the passcode was entered into a cell phone that did not contain CSAM and for the phone that did contain CSAM, agents received the passcode from Defendant's brother. Based on the analysis above, it is immaterial whether agents received the passcode from Defendant when he entered the passcode into the phone, or from his brother.

C. **Search Warrant**

Defendant contends that the search warrant was facially overbroad and insufficiently particular because it had no temporal limit on what could be searched and seized on Defendant's phone. Mot. at 11-12. Further, Defendant contends that the search warrant contained no objective standards by which executing officers could differentiate items subject to seizure from those which were not. *Id.* at 14-15. Finally, Defendant contends that the search warrant accused Defendant of offenses for which there was no probable cause, including production, distribution and transportation of child pornography. *Id.* at 15-16. The Government argues that the search warrant was narrowly tailored as it clearly stated what it sought and everything sought in the warrant was supported by probable cause and that temporal limits were not necessary. Opp'n at 10.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The Fourth Amendment has a specificity requirement in two respects: breadth and particularity. *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Breadth is the requirement "that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (internal citations omitted). While particularity is the requirement that the "warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize." *Id.* (internal citations omitted).

Starting with breadth, Defendant argues the dominion and control provision in the warrant lacked temporal limitations. Mot. at 13. Defendant also argues that the affiant agent made no attempt to time-limit the warrant's provisions to the week-long period in February of 2023, when Defendant was suspected of obtaining CSAM. *Id.* at 14. The United States argues that CSAM is a continuing crime, as it is collected over a period of time and temporal limits were not necessary. Opp'n at 10. The United States highlights the fact that Defendant is alleged to have purchased CSAM online on multiple occasions. Opp'n at 11.

Further, Agent Tannehill in her warrant affidavit provided, CSAM "collections are often maintained for several years." Opp'n, Exhibit B at 14.

The dominion and control provision in the warrant was not overbroad simply because it lacked temporal limitations. "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *United States v. Spilotro*, 800 F.2d 959, 963 (1986). Defendant cites the similarities of the warrant in this case and the warrant in *United States v. Lofstead*.

In *Lofstead*, the defendant was accused of trying to purchase commercial sex with a minor, but in reality, was talking to an undercover agent the entire time. *Lofstead*, 574 F. Supp. 3d 831, 837 (D. Nev. 2021). The Court, in finding the search warrant overbroad for lack of temporal limitations, noted that the warrant authorized a search for child porn, for which there was no probable cause. *Id.* at 840. The Court further noted that the Government had "very precise knowledge of the date and times texts and internet searches could be targeted because Lofstead had communicated directly with undercover agents," placing the government in "an unusually informed position to assess where evidence likely would be located on the phone." *Id.* at 843-844. Because of this, the Court noted that the government only had probable cause to search the cell phone in a very limited window of time. *Id.* at 843. The Court further noted that "[t]emporal restrictions are not a de facto requirement." *Id.*

This case is distinguishable from *Lofstead*. Here, when the warrant was signed, the Government was not aware which specific individual in the residence made the purchases of CSAM and the contents of Defendant's communications with the Seller were also unknown. Although the Government suspected Defendant was the individual involved, they rightly sough a warrant to determine who purchased CSAM. The Government was aware of the four times the Lira-Prado PayPal Account sent money to the Seller, but nothing more. As the Government notes, possession of CSAM is a continuing crime and is collected over a period of time and maintained for years. Further, evidence of dominion and control was necessary to identify who owned and possessed the electronic devices that

purchased CSAM. For those reasons, based on the specific circumstances of this case, temporal limitations were not necessary and therefore the warrant was not overbroad.

In regard to particularity, Defendant argues that the warrant contained no objective standards by which executing officers could differentiate items subject to seizure from those which were not. Mot. at 14-15. Defendant also argues that the warrant accused Defendant of uncharged offenses without probable cause; production of child pornography, distribution of child pornography, and conspiracy to send child pornography. *Id.* at 15-16.

The Court has reviewed the affidavit in support of the search warrant and the attachments. Attach. B clearly describes the items to be seized, which are all electronic storage locations where CSAM videos and photos can be stored, communications between the user of the phone and the Seller of CSAM who they would communicate about the purchase of CSAM or financial information. The Seller was selling CSAM over an internet application, communicating with buyers of CSAM over internet messaging and accepting payment though PayPal. It was appropriate for the warrant to search all of the areas noted in Attach. B of Defendant's electronic devices as the areas are related to and likely to contain evidence of the crimes charged. Therefore, the warrant contained sufficient objective standards by which agents executing the warrant could differentiate items subject to seizure from those which were not.

When reviewing a warrant, the "magistrate judge's determination" of probable cause "should be paid great deference." *U.S. v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). The Supreme Court reminds courts that "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Id*. at 1050-51 (internal quotations and citations omitted). The standards for determining probable cause for a search means a "fair probability that contraband or evidence is located in a particular place." *Id*. at 1050 (internal quotations and citations omitted). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical

question." *Id*. (internal quotations and citations omitted). "Neither certainty nor a preponderance of the evidence is required." *Id*. (internal citations omitted).

      Here, the affidavit provided sufficient support for Magistrate Judge Karen S. Crawford to conclude that probable cause existed to search Defendant's residence. There is clearly probable cause to search for evidence of crimes outlined in 18 U.S.C. §§ 2252 and 2252A, possession and receipt of child pornography. The Court notes that production of child pornography, distribution of child pornography, and conspiracy to send child pornography are also outlined in 18 U.S.C. §§ 2252 and 2252A. Since there is clearly probable cause to search for evidence of crimes outlined in 18 U.S.C. §§ 2252 and 2252A, the Court finds that the references to production of child pornography, distribution of child pornography, and conspiracy to send child pornography does not invalidate the warrant. The Court **DENIES** Defendant's motion to suppress the search warrant.

### D. Defendant's Post-Invocation Statements

      Defendant seeks to suppress his answers to the agent's biographical questions as the questions in the context of the case were incriminatory and directly linked Defendant to the accounts that the agents knew were involved in the purchase of CSAM. Mot. at 16. Defendant contends all of the biographical questioning exceeded the scope of necessary biographical data, because Defendant was not actually arrested until months later. Mot. at 17. The United States indicates they do not intend to use Defendant's post invocation statements in its case in chief, but reserves the right to cross-examine Defendant about those statements should he testify. At this point, the issue is moot and the Court **DENIES** the motion as moot. However, prior to the use of such answers, the Court will address the voluntariness of the statements.

//
//
//
//
//

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to suppress the seizure of his notebook, the contents of his cell phone and the search warrant. The Court further **DENIES** as moot Defendant's motion to suppress his post-invocation statements.

**IT IS SO ORDERED**.

Dated:  January 5, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge